DOMAGALA, APPELLANT, *v.* SHEETS, APPELLEE.*

(No. 199—Decided December 12, 1958.)

*Mr. John Winn* and *Messrs. Moan & Andrews,* for appellant.
*Messrs. Shaw, Clemens & Williams,* for appellee.

GUERNSEY, J.  As sometimes occurs when a multiple-member court divides in its decision, an opinion first drafted, proposed as the majority opinion, becomes a dissenting opinion and the majority opinion is thereafter drafted.  That being the case

*Motion to certify the record overruled, April 15, 1959.

here, for the purpose of brevity we refer to the dissenting opinion for the general facts of the case and will limit the statement of facts herein to those additional facts we deem necessary to a full consideration of the respective errors assigned by plaintiff in this appeal on questions of law.

As we have carefully considered plaintiff's first, fifth and sixth assignments of error and subdivision (B) of his third assignment of error and find them completely without merit, we will confine our opinion to a disposition of plaintiff's remaining assignments of error.

II. Second Assignment of Error:

"Refusal of the trial court to give plaintiff's special requests to charge the jury before argument."

It is undisputed in evidence that plaintiff, at the time defendant was attempting to pass, "turned my tractor to the right and hit the soft shoulder." Plaintiff claims that under the circumstances he was acting in a sudden emergency and submitted two instructions relating thereto to the court, requesting that one of the two should be charged before argument. This the court refused to do, nor did the court charge in its general charge as to sudden emergency.

We are able to dispose of this assignment of error without examining into the correctness or incorrectness of the charges submitted to the court.

Were it not for the fact that plaintiff turned his vehicle onto the soft berm, for all that appears in the record, plaintiff would not have collided with the culvert and incurred any injuries from such collision. His conduct in turning onto the soft berm differed from the usual manner of driving upon a highway and such conduct may or may not have constituted negligent conduct contributing to cause the ensuing collision. Such conduct raised the issue of contributory negligence to be determined by the jury. And, in determining such issue the jury should consider whether or not the plaintiff exercised due care under the circumstances then existing. One of these circumstances which the jury could and should have considered and determined was whether a situation of sudden emergency confronted the plaintiff at the time he turned his vehicle onto the berm.

Contributory negligence was in issue and the refusal to give a correct instruction as to sudden emergency would relate not to the issue of defendant's negligence but would relate instead and constitute error pertaining only to the issue of contributory negligence. However, under the two-issue rule, the verdict of the jury for the defendant being general and not being tested by interrogatories, the error, if any, in submitting the issue of plaintiff's contributory negligence would not constitute prejudicial error so long as there was no error in the submission of the issue of defendant's negligence. As will hereinafter appear, there being no error in the submission of the issue of negligence, the error, if any, as to the issue of contributory negligence in not charging as to sudden emergency cannot be considered prejudicial to the plaintiff, and this assignment of error is without merit.

III. Third Assignment of Error:

"(A) By charging the jury on the defense of contributory negligence there being no evidence upon which the jury could base a finding of contributory negligence."

We refer to our disposition of plaintiff's second assignment of error which completely disposes of this contention.

"(C) The court erred in charging the jury that the plaintiff had the burden of sustaining all of the allegations of his petition by a preponderance of the evidence."

Examination of the charge reveals that the court did not instruct the jury that the plaintiff had the burden of sustaining "all of the allegations of his petition," but charged the jury that plaintiff had the burden of sustaining "all of the *material* allegations" (emphasis added) of the petition, which statement was correct. Nor can plaintiff predicate error on the omission of the court to define "material allegation," for plaintiff did not make any request, denied by the court, that the court so charge.

IV. Fourth Assignment of Error:

"Failure of the court to give a direct answer to the jury's question regarding necessity for proof of contact between vehicles."

It should be emphasized that the record shows the only exception made by counsel for plaintiff relating to the additional charge given to the jury following the question of the jury as to

the necessity of proof of "direct contact" was made *after* the jury had retired for further deliberation, and is in the following words:

"We would like to enter a general exception to the jury having been called back in open court and instructions having been given and additional law having been given to the jury by the court.

"We further feel that the court should have instructed the jury that direct contact, under the circumstances of this accident, need not be proven."

The court did not rule on this exception, nor did it further charge the jury.

Under the facts and circumstances of this case there was no proof of negligence by defendant as a matter of law. The evidence of negligence being conflicting, it was solely a question for the jury to determine. The jury could rightly conclude that defendant failed to exercise due care in the manner in which she drove even though they should also determine that there was no direct contact. Or, the jury could have rightly concluded that the defendant would fail to exercise due care in the manner in which she drove only if her vehicle also came in direct contact with plaintiff's vehicle. Under these circumstances the court could not have categorically answered the jury's question either "yes" or "no" without thereby invading the province of the jury and committing prejudicial error. It would have been at least as prejudicially erroneous for the court to have charged, as plaintiff's counsel suggested should have been done, that "direct contact, under the circumstances of this accident, need not be proven."

The court's additional charge to the jury was primarily a repetition of that part of its general charge pertaining to pertinent statutory and common-law standards of care and a reiteration that "whether or not either one or both of these drivers was negligent in this respect is a question for the jury to determine, taking into consideration all of the facts and circumstances which the evidence shows then and there existed."

The additional charge was not only correct but was responsive to the question posed by the jury and there is nothing in the record on which to base a conclusion that it was, in any

sense, confusing or misleading. There was consequently no error of commission requiring a reversal.

As to the contention of plaintiff's counsel that if same were an omission "he did request the court to charge further," let us examine the law on that subject and the words of counsel.

The law as to omission to charge in a general charge is equally applicable to the omission to charge, if any, in answer to a question of the jury to the court after deliberations are under way.

It is stated in the case of *Rhoades* v. *City of Cleveland,* 157 Ohio St., 107, 105 N. E. (2d), 2:

"As a general rule, in the absence of statutory provisions to the contrary, a party, represented by counsel, may not ordinarily avail himself of an error which was not called to the attention of the trial judge and which could and might have been corrected by the trial judge if it had been called to his attention. *Adams* v. *State,* 25 Ohio St., 584."

A leading case pertaining to the omission to charge in a civil action is that of *Columbus Ry. Co.* v. *Ritter,* 67 Ohio St., 53, 65 N. E., 613, decided by the Supreme Court in 1902, wherein the court held:

"1. Where the charge of the court is free from error prejudicial to the party excepting thereto, but fails to cover all the questions involved in the case, such failure is not a ground for reversal, *unless it was called to the attention of the court, and further instructions requested and refused,* provided the jury is not misled by the charge as given." (Emphasis added.)

"2. A general exception to the charge of the court as now permitted by Section 5298, Revised Statutes, is effectual only as to errors of law existing in the charge as given, and does not bring in review on error, an omission or failure to give further proper instructions."

The general rule mentioned in the case of *Rhoades* v. *City of Cleveland, supra,* and the exception thereto, together with the limitations on that exception established by the case of *Columbus Ry. Co.* v. *Ritter, supra,* have, since 1936, been incorporated in what is now Section 2321.03 of the Revised Code, namely:

"An exception is not necessary, at any stage or step of the

case or matter, to lay a foundation for review *whenever a matter has been called to the attention of the court* by objection, motion, or otherwise *and the court has ruled thereon.* Error can be predicated upon erroneous statements contained in the charge, not induced by the complaining party, without exception being taken to the charge." (Emphasis added.)

In 1946 the Supreme Court in the case of *Karr, Admr.,* v. *Sixt,* 146 Ohio St., 527, 67 N. E. (2d), 331, again held:

"9. If a charge is not confusing and misleading and is good as far as it goes, the omission of some matters which might have been included is not fatal, *unless the omission was called to the attention of the court and an instruction requested.*" (Emphasis added.)

As is pointed out in the dissenting opinion herein the Supreme Court in an opinion written by Judge Taft in the case of *State* v. *Tudor,* 154 Ohio St., 249, 95 N. E. (2d), 385, noted the application of this rule to criminal cases.

Thereafter, in 1952, in the case of *Rhoades* v. *City of Cleveland, supra,* the Supreme Court again held:

"Where claimed errors in the charge of the court are errors of omission and not errors of commission, *unless counsel has requested the court to supply the omissions,* such errors of omission will not ordinarily justify a reversal." (Emphasis added.)

In the opinion in that case, written by Judge Taft and concurred in by four other members of the court, the case of *Columbus Ry. Co.* v. *Ritter, supra,* is reviewed and it is concluded that the law established by paragraph 2 of the syllabus of the case of *Columbus Ry. Co.* v. *Ritter, supra,* is still applicable, and that even though the Court of Appeals did determine that the trial court failed to separate and define the issues of fact and failed to charge the law upon such issues, the judgment of the trial court could not be reversed in the absence of a request to the trial court to supply the omissions. Judge Taft further was of the opinion that the provisions of the statute, hereinbefore quoted, fortify this conclusion.

We note that the statute includes the phrase, "and the court *has ruled thereon,*" and that the first paragraph of *Co-*

*lumbus Ry. Co.* v. *Ritter, supra,* includes the phrase, ''and further instructions requested *and refused.*''

Since an omission is not, in itself, error, and does not become error if a request to supply the omission has been made and granted, but becomes error only when a request to supply the omission has been made and refused, although not expressed in each of the cases cited, it is of necessity implied, that before there can be error based on an omission to charge there must be a ruling of the court, or conduct equivalent to a ruling, refusing the request to supply the omission.

It is obvious from the record that the trial court did not consider the statement of the plaintiff's counsel made after the jury had again retired as a request to charge, and in no event did he rule thereon or refuse same as if it were a request to charge. Nor will the majority of this court torture the plain and explicit words of plaintiff's counsel and thereby interpret such words as a request to charge. Nor is it conceivable that a statement, made in the same breath as the statement excepting to any additional instructions to the jury, was intended as a request for additional instructions to the jury.

We conclude that even were we to concede that the jury could correctly have been additionally instructed that ''direct contact, under the circumstances of this accident, need not be proven,'' which concession we do not make, the failure to so instruct was an omission on which, under the circumstances of this case, the plaintiff could not predicate reversible error.

There being no error prejudicial to plaintiff in the particulars assigned and argued, the judgment for defendant is hereby affirmed.

*Judgment affirmed.*

MIDDLETON, P. J., concurs.

YOUNGER, J., dissenting. The plaintiff's fourth assignment of error is as follows:

''Failure of the court to give a direct answer to the jury's question regarding necessity for proof of contact between vehicles.''

Plaintiff, in his petition, alleges that he was operating a 1950

tractor and a 1951 Trailmobile trailer in a northerly direction on route No. 66, north of Defiance, in the northerly bound or eastwardly lane of the highway and to the right of the center thereof, and that the defendant, Colletta Sheets, was operating a 1952 Chevrolet sedan, also in a northerly direction along said highway, to the rear of and overtaking the tractor-trailer combination being operated by the plaintiff, and that, in overtaking and passing, the defendant drove the Chevrolet automobile she was operating off the paved portion of the highway on to the berm at the left or west side of the highway; and that, in attempting to get back on to the paved portion of the highway, she lost control of said automobile, causing it to skid *and to come into collision with the left front fender of the tractor being operated by the plaintiff*.

The question of whether there was a direct contact between the two vehicles involved was one which occupied a prominent place in the trial. The only direct evidence in the record concerning contact between the vehicles was the testimony of the plaintiff, as follows:

"Q. At any time, Mr. Domagala, during the process of this passing by Mrs. Sheets, did her car come in contact with your truck? A. I heard it tong just as she—I heard something hit, a connection, and that is when I turned my wheel to the right and hit the soft shoulder.

"Q. You didn't see the hitting? A. Couldn't see it hit.

"Q. What part of this truck did she hit? A. I would say the left front of the tractor."

"A. I just heard a knock and if I proceeded I would probably run over the top of her. To avoid from striking her car more I turned to the right."

"A. Then the next thing I seen she was right alongside me and fighting her car so I just pulled my trailer brake down and let up on it and she come right out in front of me and the front end come on the road and the back end jumped right in front of me and at that time I heard a tick and turned my tractor to the right and hit the soft shoulder."

In a statement given to the Highway Patrol, which was introduced in evidence, the defendant stated:

"The berm was very soft and when my car came back on the road, it came back suddenly. I was completely past the truck when I came back on the road, but was rather close to truck."

On direct examination, the defendant testified as follows: "I pulled to the left of the road and started around. After crossing the bridge, I dropped on to the berm. I proceeded on the berm until approximately eight or ten feet ahead of the truck, at which time I pulled back on the highway. At all times I remained in the left lane of traffic until I was approximately two hundred or two hundred and fifty feet ahead of the truck, however when I pulled on to the road, eight or ten feet ahead of the truck, I did not at no time, swerve."

Two of the defendant's brothers were called as witnesses for the defense, and each of them testified that the defendant arrived home shortly after the accident and that they examined the defendant's automobile very carefully, and that there was no evidence or damage or scratches that would indicate that the defendant's car came in direct contact with the plaintiff's tractor-trailer outfit.

In connection with this fourth assignment of error, section C of plaintiff's third assignment of error should be kept in mind, and is based upon the following part of the court's general charge:

"Because of this presumption, the burden of proof is upon the plaintiff, before he is entitled to recover in this case, to prove *all* of the material allegations of the petition by a degree of proof known as 'a preponderance of the evidence.'" (Emphasis added.)

In using this language, the court undoubtedly had in mind the statutory definition of "material allegation," which is that a material allegation in a pleading is one which could not be stricken out without leaving it insufficient. However, the court did not give this definition to the jury, and since counsel made no request or did not call this omission to the attention of the court, the assignment of error is not well taken. However, as we shall see later, it becomes important in the consideration of this, the fourth assignment of error.

After the jury had deliberated for some time, it returned to open court for further instructions and, after being asked by the court to state the question, the foreman stated:

"Your Honor, we have a little difference in opinions in the jury, on the question of whether in this case Coletta Sheets would have to come in direct contact with, whether it has to be proven to become (come) in direct contact with the truck to directly cause the accident."

This question the trial judge never answered. The trial court said:

"I will read to you two sections of the law and give you some instructions thereon."

Thereupon, the court read Section 6307-27, General Code, which appeared in his general charge to the jury. He then read Section 6307-20, General Code, which was contained in the general charge. The court then, in another paragraph, read verbatim from his general charge.

The court then said:

"With that—that, ladies and gentlemen of the jury, is the law with additional instructions and under the question you pose, is one for the jury to determine."

These so-called additional instructions were additional only in the sense that they were reread a second time. They did not satisfy the jury, because the foreman immediately asked the court:

"Could you read the points on the—because, I mean, on the point they are suing on, about where she goes around and comes in collision with them? I mean on the paper over there, what he is suing her for?

"By a juror: The petition.

"By the foreman: You see, there was two points; you read one and then you read the other about did she pass him and come in collision with him. Would you dare read how that reads?

"By the court: The court would rather the jury go back and come up with a finding. The pleadings are not evidence. I have read the pleadings in this case to correctly state the claims of the parties, but not for the purpose of evidence. With

these instructions, I believe the jury can and should proceed with their deliberations.''

After some discussion outside the hearing of the jury as to whether the pleadings should be sent to the jury room, the court said to the jury:

''The jury, under the direction of the bailiff, will retire. If you need any further instructions, advise the bailiff.''

Immediately thereafter, the following appears:

''(Thereupon, the jury retired for further deliberations)

''By Mr. Moan:

''We would like to enter a general exception to the jury having been called back in open court and instructions having been given, and additional law having been given to the jury by the court. We further feel that the court should have instructed the jury that direct contact, under the circumstances of this accident, need not be proven.''

Counsel for plaintiff, in his opening statement, did not charge direct contact. His statement is as follows:

''As soon as the car went to the left and swerved back to the right and the front end got on the highway, and the rear end flew out to the right directly in the path of the tractor in which Mr. Domagala was riding, so close that he knew there would be an accident if he didn't do something, and he was afraid if he continued straight ahead he would hit that car and roll it over, he instinctively did what any driver would do under those circumstances. He swerved to the right, and, as he did that, his wheels dropped off the road on to the shoulder.''

It must also be borne in mind that the trial court, early in the general charge, read the entire petition to the jury, except the caption.

From this record, it is evident that the jury asked of the trial court a very intelligent and germane question. Simply and legally stated, its question is as follows:

''Since the evidence is conflicting as to whether or not the two vehicles came in direct contact, and since there is a difference of opinion among the members of the jury, will you advise us as a matter of law, whether the allegation in plaintiff's petition that there was direct contact is a material allegation, and

must be proven, as far as the issues which we are called upon to determine are concerned?"

In answer to this question, the trial judge referred back to his general charge and read to the jury certain instructions which in the abstract are legally correct, as far as they go, but were no answer to the question raised.

In my opinion, it was the duty of the trial judge to answer this question in the negative, and to tell the jury that even if plaintiff had failed to prove direct contact or his lawyers had abandoned that theory, the defendant could be guilty of negligence if it were proven that she brought her automobile back in the center of the highway too soon, and in such close proximity to plaintiff's tractor as to cause him to believe that direct contact was imminent. The action of the jury in returning a verdict for the defendant soon after having failed to get an answer to their inquiry from the trial judge is, in my opinion, based upon the assumption by the jury that since plaintiff alleged direct contact in his petition and failed to prove it, he could not, *ipso facto*, recover.

It is argued by the appellee that the case of State v. *Tudor*, 154 Ohio St., 249, 95 N. E. (2d), 385, is decisive of this question. The first paragraph of the syllabus of that case is as follows:

"Where a trial court gives an instruction in answer to an inquiry of the jury which instruction is incomplete but correct as far as it goes, counsel has the duty to request the trial court to charge further so as to eliminate any possible confusion of the jury which may result from the incompleteness of such instruction. Any failure to charge further, if it is error, is an error of omission and not of commission. Unless counsel has requested the court to supply the omission, such error will not ordinarily justify reversal even in a criminal case."

Counsel for defendant also rely upon the case of *Poe* v. *Suburban Motor Freight, Inc.*, 72 Ohio Law Abs., 289, 134 N. E. (2d), 865, which was decided by the Second District Court of Appeals, following the *Tudor case.*

It is true that in the case at bar, counsel, after a general exception to the additional instructions, did not use the words, "I request the court to instruct the jury that direct contact

need not be proven." However, he did call this specific matter to the court's attention.

In neither the *Tudor* nor the *Poe case* did counsel make any attempt to request the trial court for additional instructions, nor point out to the trial court any objections had to the charge as given, nor point out to the court any failure to charge along the lines upon which counsel later based the appeal.

In connection with the case at bar, the following words of Judge Taft in the *Tudor case* are, in my opinion, of particular significance:

"A fair administration of justice requires that, when an error occurs in a trial, the trial judge should be given an opportunity, if possible, to correct it."

In the instant case, in view of the fact that the question of whether or not there had been direct contact between the vehicles was of such importance, and hotly disputed, I feel that when counsel told the court that it should have instructed the jury that direct contact *under the circumstances of this accident* need not be proven, he did, substantially, comply with the rule stated in the *Tudor case,* and that this substantial compliance is sufficient enough for this court to consider the matter. The trial court was "given an opportunity" to correct his error.

Whether the jury was seated in the jury box, on its way to the jury room, or actually back in the jury room when counsel called this matter to the attention of the court is of no consequence here. The record shows that it was called to the attention of the court. Furthermore, a trial judge cannot escape the consequences of error by standing mute or ignoring a matter when his duty calls upon him to act.

Since, in my opinion, prejudicial error intervened in the submission of this case upon the issue of the negligence of the defendant, the two-issue rule does not apply and for the reasons stated above, I must dissent from the judgment of the majority.